UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
LANG GAY, on behalf of himself
And others similarly situated,

                     Plaintiff,

 - against -

TRI-WIRE ENGINEERING SOLUTIONS, INC.
And ABC CORPORATIONS #1-10, and
JOHN DOES #1-10,

                     Defendants.
--------------------------------------X

**MEMORANDUM AND FINAL
APPROVAL ORDER OF
CLASS ACTION
SETTLEMENT**

12-cv-2231 (KAM)(JO)

**MATSUMOTO, United States District Judge:**

      On May 4, 2012, plaintiff Lang Gay ("Gay" or "plaintiff") filed the instant class action lawsuit on behalf of himself and others similarly situated, against Tri-Wire Engineering Solutions, Inc. ("Tri-Wire" or "defendant"), alleging violations of the Fair Labor Standards Act and the New York Labor Law.  On August 7, 2013, the court entered a Preliminary Approval Order that (i) preliminarily certified a settlement class; (ii) preliminarily approved the settlement; (iii) preliminarily appointed plaintiff's counsel as class counsel; (iv) directed notice to the settlement class; and (v) set a fairness hearing, which was held on October 30, 2013, and established deadlines for objections.  Presently before the court are plaintiff's motions for certification of the settlement class, final approval of the proposed class action

settlement agreement, and approval of the FLSA settlement; for attorney's fees and costs; and for a class representative award.

For the reasons that follow, the court (i) certifies the settlement class; (ii) approves the settlement; (iii) appoints plaintiff's counsel as class counsel and awards plaintiff's counsel attorney's fees and costs in the amount of $66,820.00; and (iv) awards $7,500 to plaintiff Gay as class representative.

**BACKGROUND**

## I.   Complaint

Plaintiff filed the instant class action lawsuit on behalf of himself and others similarly situated, on May 4, 2012, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by Tri-Wire, unknown corporate defendants (ABC Corporations #1-10), and unknown officers of the defendants (John Does #1-10).[1]  (ECF No. 1, Complaint ("Compl.") dated 5/3/12 and filed 5/4/12.)  Specifically, plaintiff claimed, *inter alia*, that defendants violated the FLSA and NYLL by failing to pay overtime wages owed to him and other similarly situated current and former technicians who installed and repaired cable and cable-related services since May 3, 2006. (Compl. ¶¶ 1, 12.)  Plaintiff sought recovery of their unpaid

---

[1]   Tri-Wire is the only defendant that has appeared and filed an answer. (ECF Nos. 8, 9.)

overtime wages, liquidated damages, and attorneys' fees and costs. (*Id.* ¶¶ 69, 75.)

On February 7, 2013, Magistrate Judge Orenstein granted plaintiff's request to disseminate a notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. (ECF No. 45, Order of Notification dated 2/7/13.) Nineteen individuals filed consent to become parties in the class action. (*See* Docket.)

## II. Proposed Settlement

After engaging in discovery, on August 1, 2013, the parties filed a joint motion for preliminary approval of settlement, appointment of plaintiff's counsel as class counsel, and approval of the proposed notice of settlement of class action. (*See* ECF Nos. 59, 60, 61.) On August 7, 2013, the court preliminarily certified the following class for settlement purposes (the "Settlement Class"):

> [A]ll Brooklyn Technicians that were employed by
> Defendant TriWire at their Brooklyn location from
> June 28, 2008 through and including December 8,
> 2012, except those technicians that received
> payment under the Department of Labor (DOL)
> settlement agreement. The DOL settlement covered
> off-the-clock claims from September 9, 2008 to
> April 29, 2011. Therefore, all Brooklyn
> Technicians who deposited or cashed their check
> under the DOL settlement, are precluded from
> recovering in the instant action for the period
> September 9, 2008 through and including April 29,
> 2011.

(ECF No. 62, Preliminary Approval Order dated 8/7/13 ¶ 2; ECF
No. 61, Ex. B, Declaration in Support of Joint Motion for
Preliminary Approval of Settlement by Douglas Lipsky ("Lipsky
Decl.") dated 8/1/13, Proposed Settlement Agreement at 6.)  The
settlement class excludes any class member who timely opts-out
of the settlement.  (Lipsky Decl., Ex. B, Proposed Settlement
Agreement ("Proposed Settlement Agreement") at 8.)

        The court preliminarily approved the terms of the
settlement agreement, which creates a fund in the amount of
$183,123.60 to settle the case.  (ECF No. 62, Preliminary
Approval Order dated 8/7/13 ¶ 1; Proposed Settlement Agreement
at 9-11.)  The fund covers class members' awards, plaintiff
Gay's service award, plaintiff Gay's individual claim against
Tri-Wire for failure to pay him according to the correct piece-
rate method, and attorney's fees and costs for plaintiff's
counsel.  (Proposed Settlement Agreement at 9-11.)  The
Preliminary Approval Order directed notice ("Notice") to be
given to Settlement Class members to object to or opt out of the
settlement, and scheduled a fairness hearing pursuant to Federal
Rule of Civil Procedure 23(e)(2).  (Preliminary Approval Order
at 3-4.)

        As directed in the Preliminary Approval Order, on
September 6, 2013, the settlement administrator, Simpluris, Inc.
("Settlement Administrator"), mailed copies of the notice packet

4

("Notice Packet"), containing the court-approved notice and claim form, to Settlement Class members whose names and addresses were provided by defendant's counsel.[2] (ECF No. 63, Decl. of Danielle Behring ("Behring Decl.") dated 10/24/13 at 2-4.)  No objections to the proposed settlement were filed by the court's deadline of October 21, 2013.  (Behring Decl. at 4.)  As of October 24, 2013, the Settlement Administrator had received 101 valid claim forms.  (*Id.* at 4.)

No objectors appeared at the October 30, 2013 fairness hearing.  (Minute Entry dated 10/30/13.)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 23(e), a class action cannot be settled without certification of a class and court approval.  In deciding whether to approve a proposed class action settlement, the court must first determine whether the terms of the settlement are fair, reasonable and adequate, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983), and that the settlement was not a "product of collusion," *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  Where, as here, a settlement is negotiated

---

[2]     Defendant provided a list of 223 class members to receive notice.  One additional individual was added to the Settlement Class after the individual contacted the Settlement Administrator to request inclusion.  (Behring Decl. ¶ 8.)  As of November 15, 2013, seventeen (17) Class Members were considered undeliverable because the Settlement Administrator was unable to locate their current addresses.  (ECF No. 79, Second Supplemental Declaration of Danielle Behring dated 11/15/13 ("11/15 Behring Decl.") ¶ 2.)  A full list of the 207 Class Members who are presumed to have received their Notices can be found at ECF No. 79, Ex. A.

prior to class certification, "it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85.

## I.  Certification of the Settlement Class

Before deciding whether to approve a class action settlement, the court must first determine that the putative class is certifiable under Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) ("[A] class must meet each of the four requirements in Rule 23(a) and at least one of the three requirements in Rule 23(b)."). When certifying a class for settlement purposes only, the district court "'need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *In re Global Crossing*, 225 F.R.D. at 451 (citing *Amchem*, 521 U.S. at 620). Furthermore, the court should base its determination regarding certification "solely on the allegations set forth in the complaint, which are accepted as true, and not on an inquiry into the merits of the plaintiff's claims." *Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996) (internal citations omitted). The party seeking to certify a class bears

the burden of demonstrating that the requirements of Rule 23 are satisfied.  *Amchem*, 521 U.S. at 614.

Under Rule 23(a), there are four prerequisites that must be satisfied for certification: numerosity, commonality, typicality, and adequacy of representation.[3]  In addition, because the parties here are seeking class certification pursuant to Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

A.    **Numerosity**

The numerosity requirement under Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). Impracticable does not require joinder to be impossible, only that it will be difficult or inconvenient to join all members of

---

[3]    Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

the class. *Civic Ass'n of Deaf of New York City*, 915 F. Supp. at 632. Although courts do not require an exact number of members to satisfy the numerosity requirement, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), numerosity has in the past been presumed when there are as few as 40 purported class members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the purported class consists of more than 200 current and former technicians employed by defendant Tri-Wire. (*See* ECF No. 79, Second Supplemental Decl. of Danielle Behring dated 11/15/13 ("11/15 Behring Decl.").) Accordingly, the numerosity prerequisite is satisfied.

**B. Commonality**

Under Rule 23(a)(2), the party seeking class certification must also show that there are issues of law and fact that are common to the proposed class. The commonality prerequisite assesses whether the named plaintiff's claim and the class's claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Commonality may be met even though individual circumstances differ, so long as class members' 'injuries derive from a unitary course of conduct.'" *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 354 (E.D.N.Y. 2011) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)).

Courts take a liberal interpretation of the commonality prerequisite. *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, No. 12 Civ. 3371, at *6 (S.D.N.Y. Nov. 18, 2013) (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005)).

Here, plaintiff argues that there are several common issues of law and fact between his individual claims and the class members' claims, specifically, that Tri-Wire failed to compensate him and the class members for each hour worked, in violation of the FLSA and the NYLL. (ECF No. 73, Mem. in Support of Mot. for Cert. ("Pl. Mem.") filed 10/29/13 at 9-10). Thus, plaintiff alleges that Tri-Wire engaged in activities, stemming from a uniform corporate policy, that harmed class members in the same way. On similar facts, courts have routinely held that commonality is satisfied. *E.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (finding commonality satisfied where complaint alleged that defendant failed to pay workers minimum wage and overtime wages); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (holding class members raised common issues of whether defendant had a policy of not paying marketing representatives overtime wages and whether defendant failed to pay overtime wages); *D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810, No. 12-CV-1120, at *20 (E.D.N.Y. June 18, 2013)

("[C]ourts have consistently held that claims by workers that their employers have unlawfully denied them overtime wages to which they were legally entitled meet the commonality prerequisite for class certification").

Therefore, the court finds that plaintiff satisfies the commonality prerequisite.

## C. Typicality

The third prerequisite under Rule 23(a), typicality, is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). When the defendant is alleged to have committed the same unlawful conduct against both the named plaintiff and the putative class members, the typicality prerequisite is "usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936.

Here, the named plaintiff's overtime claims are similar to those of the class members and arise from the same allegedly unlawful policy of defendant Tri-Wire to not pay overtime wages in contravention of the FLSA and the NYLL. Accordingly, the court finds that plaintiff satisfies the typicality prerequisite pursuant to Rule 23(a).

## D. Adequacy of Representation

Rule 23(a)(4)'s adequacy prerequisite "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (citing *Amchem*, 521 U.S. at 625). To satisfy the adequacy prerequisite, the named plaintiff must "possess the same interest[s] and suffer the same injur[ies] as the class members." *Id.* (internal citation and quotation marks omitted). The class representative "must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "The fact that [P]laintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). The adequacy prerequisite also requires that the named plaintiff's counsel is "qualified, experienced, and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp.*, 960 F.2d at 291; *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

In this case, there is no evidence that named plaintiff Gay has any interests that are antagonistic to the interests of the class members. Gay, like the class members,

was a technician for defendant Tri-Wire and seeks to recover unpaid overtime wages. In addition, Gay's counsel, Douglas Lipsky, Esq., of Bronson Lipsky LLP, is qualified and experienced to serve as counsel to a certified class. Specifically, Mr. Lipsky has litigated several complex wage nad hour cases, and has served as class counsel in numerous NYLL and FLSA cases. (*See* ECF No. 66, Declaration in Support of Motion for Final Approval by Douglas Lipsky dated 10/25/13 ("Final Lipsky Decl."), Ex. A, Bronson Lipsky LLP Firm Description ("Firm Description").) Accordingly, the court finds that the adequacy prerequisite is satisfied.

### E. Common Questions Predominate

Pursuant to Rule 23(b)(3), the party seeking certification must also, in addition to meeting the four prerequisites under Rule 23(a), show that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to individual litigation.

The first requirement of predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly

situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (citing *Amchem*, 521 U.S. at 615). Predominance is satisfied when the party seeking certification can show that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)); *see also McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) (finding that common questions predominate where plaintiffs were "unified by a common legal theory . . . and by common facts").

Here, common questions of law and fact predominate over any questions affecting only individual members. The class members all allege that they were subject to Tri-Wire's uniform policy of refusing to pay them overtime wages. Their claim can be established through generalized proof, namely, the existence of a uniform policy implemented by Tri-Wire. Accordingly, the court finds that plaintiff satisfies the predominance requirement.

In addition, Rule 23(b)(3) requires that the class action be a superior method to individual litigation. Rule 23(b)(3) sets forth a number of factors that are relevant in determining whether the superiority requirement is met, including whether there is any other pending litigation concerning the same controversy, and whether it is desirable to concentrate the litigation of claims in a particular forum. Fed. R. Civ. P. 23(b)(3).

In this case, plaintiff argues that class adjudication is superior to individual litigation because it will conserve judicial resources; is more efficient for class members, especially those who lack the financial resources to bring their claims individually; and will avoid repetitive proceedings and inconsistent adjudications, as all of defendant's allegedly unlawful conduct occurred within this judicial district. (Pl. Mem. at 15.) It is well-established that these reasons are sufficient to make a finding of superiority. *See, e.g.*, *D'Arpa*, 2013 WL 3010810, at *22 (superiority requirement met where individual suits would be prohibitively costly relative to the value of the claims and class action would avoid inconsistent judgments); *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010) (finding that class action would conserve judicial resources and that it is desirable to concentrate litigation before one forum because

some of the allegedly wrongful conduct occurred within the court's jurisdiction).

Thus, the court finds that plaintiff has satisfied the requirements of predominance and superiority pursuant to Rule 23(b)(3).  As discussed above, plaintiff has also satisfied each prerequisite to class certification under Rule 23(a).  Accordingly, the class of persons who received the parties' Notice Packet, and who did not opt out of the settlement, is hereby certified for purposes of settlement.  (*See* 11/15 Behring Decl., Ex. A, List of Class Members; ECF No. 77, Declaration of Danielle Behring dated 11/4/13 ("11/4 Behring Decl."), Ex. A, List of Total Undeliverable Members.)

## II.  **Approval of the Final Settlement**

After certification of the class, the court must assess under Rule 23(3) whether the class action settlement is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

### A.  **Class Settlement**

In assessing whether a class action settlement is fair, the court examines both the procedural fairness of the negotiating process leading up to the settlement as well as the substantive fairness of the settlement terms.  *D'Amato*, 236 F.3d at 85; *Khait*, 2010 WL 2025106, at *4.  Procedural fairness and substantive fairness are assessed "in light of the 'strong

judicial policy favoring settlements' of class action suits."
*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618
(S.D.N.Y. 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A.
Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

### 1. Procedural Fairness

To determine procedural fairness, courts examine the
negotiation process leading up to the settlement "to ensure that
the settlement resulted from arm's-length negotiations and that
plaintiffs' counsel have possessed the experience and ability,
and have engaged in the discovery, necessary to effective
representation of the class's interests." *D'Amato*, 236 F.3d at
85 (internal quotation marks and citation omitted). Where
parties reach a class settlement through arms-length
negotiations between experienced counsel, it is presumed that
the settlement comports with due process. *Morris*, F. Supp. 2d
at 618 ("These arm's-length negotiations involved counsel well-
versed in wage and hour law, raising a presumption that the
settlement achieved meets the requirements of due process.");
*Wal-Mart Stores*, 396 F.3d at 116.

Here, plaintiff's Memorandum in Support of Final
Approval states that the parties engaged in "extensive
discovery" prior to settlement negotiations. (Pl. Mem. at 3.)
Defendant Tri-Wire produced hundreds of pages of wage and time
records, and both plaintiff Gay and Tri-Wire's Chief Operating

16

Officer were deposed. (*Id.*) In addition, plaintiff's counsel interviewed several opt-in plaintiffs to further investigate the class members' claims. (*Id.*) Plaintiff also reports that the parties participated in numerous rounds of arm's-length settlement negotiations, through which the parties came to a settlement agreement on the monetary amount, computed according to a formula, that defendant would pay each class member; the amounts of plaintiff Gay's service payment and individual claim; and attorney's fees and costs. (*Id.* at 4.) Moreover, the class members were provided notice of the action and settlement, as set forth in II.B, *infra*. Finally, plaintiff's counsel, as discussed above, is experienced in wage and hour class action litigation.

Accordingly, the court finds that the parties have engaged in arm's-length negotiations involving experienced and knowledgeable counsel and the settlement is procedurally fair.

### 2. Substantive fairness

To determine substantive fairness, courts look to the non-exhaustive list of factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action

17

> through the trial; (7) the ability of the
> defendants to withstand a greater judgment; (8)
> the range of reasonableness of the settlement
> fund in light of the best possible recovery; (9)
> the range of reasonableness of the settlement
> fund to a possible recovery in light of all the
> attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974), *abrogated on other grounds by Goldberger v. Integrated*

*Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *McReynolds v. Richards-*

*Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citing same factors).

### a.   Complexity, Expense, and Likely Duration of Litigation

"As a general matter, the more complex, expensive, and

time consuming the future litigation, the more beneficial

settlement becomes as a matter of efficiency to the parties and

to the Court." *McBean*, 233 F.R.D. at 385.  Although the factual

and legal issues in this case are not particularly complex, an

inherent complexity nonetheless exists in litigating any class

action lawsuit, and it is reasonable to assume that continuing

this litigation would have required extensive time and expense.

Specifically, the parties would have to engage in additional

discovery to establish liability and damages, motion practice, a

possible trial, and a likely appeal, before a final judgment

could be obtained.  (Pl. Mem. at 18-19.)  "While those processes

would not be terribly complex, they are much more complex than

18

the simple and efficient settlement currently before the Court."
*McBean*, 233 F.R.D. at 386.  Absent a settlement, the costs
incurred by continuing the litigation would likely outweigh the
potential recovery to any individual class member.  Thus, "the
settlement provides certain compensation to the class members
now rather than awaiting an eventual resolution that would
result in further expense without any definite benefit."
*Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 173
(E.D.N.Y. 2012).  Accordingly, this factor weighs in favor of
approval of the settlement.

### b.    Reaction of the Class

"It is well-settled that the reaction of the class to
the settlement is perhaps the most significant factor to be
weighed in considering its adequacy."  *Chavarria*, 875 F. Supp.
2d at 173 (quoting *Maley v. Del Global Technologies Corp.*, 186
F. Supp. 2d 358, 362 (S.D.N.Y. 2002)).  If only a small number
of objections to the class settlement are received, "that fact
can be viewed as indicative of the adequacy of the settlement."
*Wal-Mart Stores*, 396 F.3d at 118 (internal quotation marks and
citation omitted).  Here, class action notices were mailed to
more than 200 individuals.  No objections were received, and no
individuals requested exclusion from the class.  Moreover, 101
of the 207 class members who received notice submitted timely
and valid claim forms (Behring Decl. at 4), which is an above-

average participation rate of 48 percent. *See Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (collecting authority). Thus, the second *Grinnell* factor weighs in favor of approving the settlement.

### c. Stage of Proceedings and Amount of Discovery Completed

The court's analysis of the extent of discovery necessary for procedural fairness "is not a matter of attaining some rigid number of pages or depositions. Rather, what is important is whether the parties have 'a thorough understanding of their case' and the extent to which there are remaining factual 'unknowns' prior to trial." *McBean*, 233 F.R.D. at 386 (quoting *Wal-Mart Stores*, 396 F.3d at 118); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) (finding *Grinnell* factor satisfied where enough discovery had taken place so that the parties could "have a clear view of the strengths and weaknesses of their cases."). Sufficient discovery for purpose of this factor has occurred when counsel is able to develop "an adequate appreciation of the merits of the case before negotiating." *Massiah*, 2012 WL 5874655, at *4 (citing *In re Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)) (internal quotation marks omitted).

Here, prior to settlement, plaintiff reports that the
parties engaged in "extensive discovery," including depositions
of plaintiff Gay and of Tri-Wire's Chief Financial Officer, the
production of the Class Members' time and wage records, before
plaintiff's counsel recommended settlement. (Pl. Mem. at 20.)
The court is satisfied that the parties were able to develop an
adequate appreciation of the merits of the case, with sufficient
information as to what trial would entail, before entering into
the instant settlement. *See Frank*, 228 F.R.D. at 185 (holding
factor satisfied where parties had ascertained identities of
class members, hours for which they performed services for
defendant, and relevant rates of pay for hours worked, such that
"the information exchanged and analyzed [was] been sufficient to
determine the unpaid overtime compensation due to each
plaintiff"). Accordingly, the third *Grinnell* factor militates
in favor of approving the settlement.

> **d.   Risks of Establishing Liability and Proving
> Damages**

In assessing the settlement, courts should "balance
the benefits afforded to members of the Class and the immediacy
and certainty of a substantial recovery for them against the
continuing risks of litigation." *Maley*, 186 F. Supp. 2d at 364.
"Litigation inherently involves risks." *Massiah*, 2012 WL
5874655, at *4 (quoting *In re Painewebber Ltd. P'ships Litig.*,

171 F.R.D. 104, 126 (S.D.N.Y. 1997)) (internal quotation marks omitted). One purpose of settlement is to avoid the uncertainty of a trial on the merits. *Chavarria*, 987 F. Supp. 2d at 174. Here, a trial on the merits would involve significant risks as to both liability and damages, because plaintiff would not only have to prevail over defendant's various affirmative defenses and establish liability, but also survive any challenges to class certification. Notably, defendant sought to file a motion for summary judgment prior to reaching a settlement; if defendant were to prevail on its motion, plaintiff and the class members would receive nothing. In addition, if this case proceeded to trial on the merits it is likely that the judgment would be appealed, further delaying or eliminating any benefits of a certain and immediate recovery for class members. Accordingly, because the proposed settlement eliminates the inherent risks and uncertainty of litigation, the fourth and fifth *Grinnell* factors weigh in favor of approval.

### e. Risks of Maintaining a Class Action Through Trial

Although plaintiff succeeded on his motion to conditionally certify the class for purposes of settlement, defendant could move to oppose class certification and make a decertification motion if this case were to continue towards a trial on the merits. This possible threat towards maintaining

the class action weighs in favor of settlement. *See, e.g.*, *Massiah*, 2012 WL 5874655, at *5 ("A motion to certify and/or decertify the class would likely require more extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process."); *In re Warner*, 618 F. Supp. at 746 ("The threat of decertification makes settlement all the more attractive"). Accordingly, the sixth *Grinnell* factor weighs in favor of settlement.

### f. Ability of Defendants to Withstand a Greater Judgment

According to plaintiff's memorandum, defendant Tri-Wire is a profitable and competitive player in its industry. (Pl. Mem. at 22.) Thus, it is possible that defendant could withstand a judgment greater than $183,123.60, the settlement fund reached in the agreement. Substantive fairness, however, "does not require that the [defendant] empty its coffers before this Court will approve a settlement." *McBean*, 233 F.R.D. at 388. While defendant may have the ability to withstand a greater judgment, this factor, standing alone, does not render settlement unfair when the other *Grinnell* factors weigh in favor of settlement. *D'Amato*, 236 F.3d at 86; *Frank*, 228 F.R.D. at 186. Accordingly, although it is unclear whether Tri-Wire can

withstand a greater judgment, this factor does not defeat final approval of the settlement.

> ### g. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth *Grinnell* factors require the court to determine whether the settlement amount falls within a "range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Massiah*, 2012 WL 5874655, at *5 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)) (internal quotation marks omitted). When a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Id.* (internal quotation marks and citation omitted). Here, plaintiff's counsel calculated the average number of class members' uncompensated hours to be 2.95, and defendant has agreed to pay overtime wages corresponding to 2.95 hours for each class member. Although the class members may have been able to recover greater damages after a trial and appeal, there are intrinsic and costly risks related to continuing litigation.

Accordingly, the court finds that the settlement fund is reasonable and fair, and that the last two *Grinnell* factors weigh in favor of settlement.

Thus, after considering all the relevant factors, the court finds the parties' settlement to be procedurally and substantively fair.

**B.    Adequacy of Notice to Class Members**

To provide effective notice to a class certified under Rule 23(b)(3), Rule 23(c)(2)(B) provides that:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  In addition, the Class Action Fairness Act ("CAFA") requires defendants participating in a proposed settlement to serve notification of the settlement upon the appropriate state and federal officials.  28 U.S.C. § 1715(b).

Here, the parties have satisfied both forms of notice required under the Federal Rules of Civil Procedure and CAFA. In the Preliminary Approval Order, the court determined that the Notice Packet, consisting of the settlement notice and claim form, was adequate and directed that it be mailed to all persons of the class as specified in the Settlement Agreement. (Preliminary Approval Order at 3; Lipsky Decl. at 7.) According to declarations by the Settlement Administrator and plaintiff's counsel, notice to class members and the appropriate state and federal officials was completed according to the Preliminary Approval Order. (*See* Final Lipsky Decl. at 5; Behring Decl.) Thus, the court finds that the notice was adequate.

## B.  **Approval of FLSA Settlement**

The standard for approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not implicate the same due process concerns. *Khait*, 2010 WL 2025106, at *6; *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at *7 (S.D.N.Y. Apr. 29, 2013) (noting that under the FLSA, unlike Rule 23, a party's failure to opt in does not prevent them from bringing own suit at later date).  Courts approve FLSA settlements when they are reached "as a result of contested litigation to resolve *bona fide* disputes" and when the "proposed settlement reflects a reasonable compromise over contested issues." *Khait*, 2010 WL 2025106, at *7 (approving

FLSA settlement where settlement was result of contested litigation and arm's length negotiations).  As discussed above, the settlement was the result of extensive negotiations that were conducted at arm's-length, after a discovery period that allowed the parties to understand the issues at stake.  Accordingly, the court approves the settlement of the FLSA claims.

## III. Attorneys' Fees and Costs

Where, as here, attorneys have created a common fund from which members of a class are compensated, the plaintiff's attorneys are entitled to "'a reasonable fee – set by the court – to be taken from the fund.'" *Chavarria*, 875 F. Supp. 2d at 176 (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  It is within the court's discretion to determine what constitutes a reasonable fee, *id.*, and in arriving at a reasonable fee, district courts in this Circuit have discretion to choose the lodestar method or the percentage of recovery method.  *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("Although we have acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the lodestar method or the percentage of the fund method.") (internal quotation marks and citation omitted); *Goldberger*, 209 F.3d at

47-50 (recounting development of both methods and holding that both methods are acceptable to calculate attorneys' fees in common fund cases).

Under the Second Circuit's modified lodestar method, the district court, in determining the reasonableness of attorney's fees, should bear in mind a number of case-specific variables to set a reasonable hourly rate, and then multiple the hourly rate by hours worked, in order to arrive at a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007). In contrast, under the percentage of recovery method, the court sets a percentage of the total recovery to determine the attorney's fees. Regardless of the method chosen, the attorney's fees awarded must be reasonable and the district court should be guided by "traditional criteria . . . including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (citing *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 162 (S.D.N.Y. 1989)).

Regardless of the method of calculation used, district courts in this Circuit have routinely upheld attorney's fees

awards of 30% to 33-1/3% in class action cases where a counsel's fee award was entirely contingent on success, and have occasionally approved greater attorney's fees awards. *See Khait*, 2010 WL 2025106, at *8 (collecting cases). Some district courts have also applied both methods as a way to cross-check the reasonableness of the amount. *See, e.g., Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (cross-checking percentage fee against lodestar-multiplier to find that 33-1/3% attorney's fee award was fair and reasonable); *Frank*, 228 F.R.D. at 189 (using lodestar method to justify attorney's fees constituting 40% of overall settlement fund); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59-60 (E.D.N.Y. 2010) (using hourly rate to confirm that attorneys' fees of 1/3 the settlement fund were reasonable); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *6 (S.D.N.Y. Apr. 16, 2012) (applying lodestar method to cross-check the award calculated using the percentage method).

Here, the proposed settlement sets forth a figure of $66,820.00 for plaintiff's attorney's fees and expenses, with $64,693.23 in fees and $2,126.74 in expenses. (Final Lipsky Decl., Ex. B, Final Settlement Agreement at 5; ECF No. 67, Mot. for Att'y Fees and Expenses dated 10/25/13 ("Mot. for Att'y Fees").) The proposed attorney's fee award constitutes approximately 35.3% of the total fund of $183,123.60. Notably,

plaintiff's counsel has been working under a contingency arrangement and the attorney's fee award was negotiated separately from the class members' payments. (ECF No. 68, Mem. in Support of Mot. for Attorney Fees and Expenses dated 10/25/13 ("Mem. for Att'y Fees") at 1-3.

The proposed fees were calculated using the lodestar method. (ECF No. 69, Decl. in Support of Mot. for Attorney Fees and Expenses dated 10/25/13 ("Decl. for Att'y Fees") at 2.) Plaintiff's counsel spent more than 184.60 hours prosecuting and settling the case (Decl. for Att'y Fees, Ex. A, Billing Records), which means that counsel is seeking compensation at the effective hourly rate of $350.45 per hour. (Decl. for Att'y Fees at 12-13.) Plaintiff's counsel notes that this rate is less than his normal hourly rate of $385, and is within the range of hourly rates charged for attorneys of comparable skill and experience in this district. (*Id.* at 13 (citing *Marshall v. Reisman*, No. 11-cv-5764, 2013 WL 1563335, at *2 (E.D.N.Y. Mar. 25, 2013) (noting that partners' hourly rates in the Eastern District of New York generally range from $300 to $450)).)

Although plaintiff's counsel seeks an attorney's fee award of 35.3% of the total fund, a slightly higher percentage than the traditional one-third contingency reward, an examination of the submitted billing records, a cross-check under the lodestar method, and the fact that the attorney's fee

award was negotiated separately from the settlement award for class members, together prompt the court to find that the requested amount of attorney's fees is fair and reasonable.  In addition, the requested amount of reimbursable expenses is fair and reasonable.  Plaintiff's counsel spent $2,126.74 in expenses, mainly in postage, copying, and binding expenses, which were incidental and necessary to the representation of the class.

Accordingly, the court grants plaintiff's motion for an award of attorney's fees and expenses of $66,820.00.

IV.  **Service Award to Named Plaintiff**

Plaintiff has also filed a motion requesting the court to approve a service award payment of $7,500 to plaintiff Gay to reward him for his assistance in the litigation and settlement of the case.  (ECF No. 70, Mot. for Class Representative Service Award dated 10/25/13; ECF No. 71, Mem. in Support of Mot. for Class Representative Service Award dated 10/25/13 ("Mem. for Class Rep. Award").)  This amounts to approximately 4% of the total settlement amount of $183,123.60, and would be paid to plaintiff Gay in addition to his individual award as a class member ($1,017.13) and the payment of his individual claim ($2,530.71).

It is within the court's discretion to determine whether a named plaintiff should receive an additional service

or incentive award. "The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997). Incentive awards are "particularly appropriate in the employment context" because "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187. Courts have applied more scrutiny to a proposed service award where the service award would reduce the amount of funds available to the class as a whole, where the named plaintiff did not demonstrate any special circumstances, and where the named plaintiff did not incur any particularly burdensome obligations to merit a service award. *See Sheppard v. Consol. Edison Co.*, No. 94-CV-403, 2000 WL 33313540, at *5 (E.D.N.Y. Dec. 21, 2000).

Here, plaintiff Gay was a current employee of Tri-Wire at the time litigation was commenced and is now a former employee, which militates in favor of a service award. *See Frank*, 228 F.R.D. at 187; *Roberts*, 979 F. Supp. at 201. Furthermore, plaintiff's counsel has stated that plaintiff Gay provided detailed factual information regarding his job duties, the hours he worked, and his wages; participated in the discovery process, including preparing and reviewing discovery responses, attending a deposition of Tri-Wire's designee, and being deposed; was involved in settlement negotiations and the approval of terms of settlement; and answered questions from the other plaintiffs. (Mem. for Class Rep. Award at 3-4, 8.) Under similar facts, district courts in this circuit have approved service awards. *See, e.g.*, *Chavarria*, 875 F. Supp. 2d at 164 (plaintiff was instrumental in fact-finding process, located and contacted class members, and attended meetings); *Toure v. Amerigroup Corp.*, No. 10-cv-5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (class representative produced documents, responded to interrogatories, and prepared for depositions); *Sewell*, 2012 WL 1320124, at *14-15 (plaintiffs produced documents, provided factual information, assisted in preparing for mediation, and reviewed terms of settlement).

Further, plaintiff Gay's requested service award of $7,500 constitutes 4% of the total settlement. As both a raw

number and as a percentage of the total settlement, this service award is consistent with service awards that have been approved in this circuit. *See, e.g.*, *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards to four class representatives, where each individual service award of $15,000 represented 5% of the total settlement); *Chavarria*, 875 F. Supp. 2d at 177 (finding reasonable a service award of $5000, which represented 3.7% of the total recovery). In addition, no one has filed any objections to the service award or the amount requested.

Accordingly, plaintiff Gay's motion for approval of the class representative service award of $7,500 is granted.

## V.    Appointment of Class Counsel

In appointing adequate class counsel, a court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)-(2).

Here, Mr. Douglas Lipsky, Esq., and Bronson Lipsky LLP have represented plaintiff since the commencement of the action. They have thoroughly investigated the potential claims in the

action by engaging in formal discovery and interviewing plaintiff and more than ten class members who opted in to class representation. (Final Lipsky Decl. at 1-2.) In addition, Mr. Lipsky and his firm have extensive experience litigating complex wage and hour cases and class actions and have demonstrated knowledge of the applicable state and federal labor laws at issue. (*See* Firm Description at 1-2.)

Accordingly, plaintiff's counsel, Douglas B. Lipsky, Esq., of Bronson Lipsky LLP, is appointed class counsel.

## CONCLUSION

For the reasons set forth above, the settlement class is certified, the plaintiffs' motion for the final approval of the Settlement and Release Agreement ("Settlement Agreement")[4] is granted, the plaintiffs' motion for the approval of the FLSA settlement is granted, and plaintiffs' counsel is appointed as class counsel.

Therefore, it is HEREBY ORDERED THAT:

---

[4] A copy of the Settlement Agreement is found at ECF No. 66, Final Lipsky Decl., Ex. B, Settlement Agreement.

1. This court has jurisdiction over the subject matter of this litigation, and over all parties to this litigation, including all the Class Members.

2. For purposes of this Order and Final Judgment, the court adopts and incorporates the definitions set forth in the Settlement Agreement, including, but not limited to, the following definitions:

Settlement Class Member: Means all Brooklyn Technicians that were employed by defendant Tri-Wire at their Brooklyn location from June 28, 2008 through and including December 8, 2012, except those technicians that received payment under the Department of Labor (DOL) settlement agreement. The DOL settlement covered off-the-clock claims from September 9, 2008 to April 29, 2011. Therefore, all Brooklyn Technicians who deposited or cashed their check under the DOL settlement are precluded from recovering in the instant action for the period September 9, 2008 through and including April 29, 2011.

Class Member: Means a person who falls within the definition of Settlement Class and who does not validly opt out of the Class pursuant to the procedure set forth in the court's Preliminary Order.

Released Persons: Defendant Tri-Wire and its present or former officers, directors, employees, trustees,

principals, attorneys, agents, representatives, shareholders, members, partners, and insurers.

3. The Fed. R. Civ. P. 23(c)(2)(B) Notice of Class Action Settlement was directed and mailed to each individual satisfying the "Settlement Class Member" definition. These individuals are listed in Exhibit A to ECF No. 80. Notice could not, however, be successfully mailed to those individuals listed in Exhibit A of ECF No. 77. (11/4 Behring Decl., Ex. A, List of Undeliverable Members.)

4. This court finds that the settlement set forth in the Settlement Agreement is fair, reasonable, adequate and in the best interests of the class in accordance with Rule 23(e) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216, and accordingly, the court approves the Settlement and directs implementation of all its terms and provisions, including the payment from the Settlement Fund of the service payment of $7,500.00 to named plaintiff Lang Gay, the payment of attorney's fees and expenses to plaintiff's counsel in the total amount of $66,820.00, and payment of plaintiff Gay's individual claim in the amount of $2,530.71.

4. Upon payment to all Class Members under the terms of the Settlement Agreement and this Order, the court dismisses with prejudice and without costs plaintiff's Complaint and all claims asserted therein. Counsel for the parties shall notify

the court by <u>January 17, 2014</u> that all payments have been made and that this action may be dismissed with prejudice and closed on the docket.

      5.    No Class Members exercised their right to opt-out of the Settlement Class.  Plaintiff Gay and all other Class Members listed in Danielle Behring's November 4, 2013 declaration (ECF No. 77) and all other Class Members who have not properly and timely exercised their opt-out rights in this lawsuit, or have exercised their opt-in rights as appropriate, are hereby conclusively deemed to have released or discharged the Released Parties from, and are permanently enjoined and barred from asserting, either directly or indirectly, against the Released Persons, any and all Claims.  All such matters are hereby finally concluded, terminated and extinguished.

      6.    The notice given to Class Members fully and accurately informed the Class Members of the proposed settlement, was the best notice practicable under the circumstances, and constituted valid, due and sufficient notice to all Class Members, complying fully with Federal Rule of Civil Procedure 23, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the United States Constitution, and any other applicable laws, as appropriate.

7. Without affecting the finality of this judgment in any way, this court hereby retains jurisdiction over consummation and performance of the Settlement Agreement.

8. The above-captioned action is hereby dismissed in its entirety, with prejudice to Plaintiff and Class Members, and with no further award of attorney's fees or costs or expenses by the court, except as awarded herein.

**So Ordered.**
Dated:    January 2, 2014
              Brooklyn, New York

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York